### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

MARILYN ELAINE WHITE,

                Petitioner,

v.

FEDERAL BUREAU OF PRISONS and
MICHAEL SEGAL, *Warden*,

                Respondents.

Civil No. 23-725 (JRT/LIB)
Civil No. 23-760 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER
ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND
DISMISSING PETITIONER'S WRIT OF
HABEAS CORPUS**

---

Marilyn Elaine White, Reg. No. 25675-509, FCI Waseca, P.O. Box 1731, Waseca, MN 56093, *pro se* Plaintiff.

Adam J. Hoskins and Anna H. Voss, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendant.

Petitioner Marilyn Elaine White brings this Petition for Writ of Habeas Corpus alleging that the Bureau of Prisons ("BOP") improperly calculated and failed to apply her earned time credits under the First Step Act of 2018 ("FSA"). Magistrate Judge Leo I. Brisbois reviewed White's Petition and issued a Report and Recommendation ("R&R") recommending the Court deny and dismiss White's Petition. Because White's claims for relief are premised on an incorrect interpretation of the FSA and the Court lacks authority to grant White her requested relief, the Court will adopt the R&R, deny her Petition, and dismiss this matter.

**BACKGROUND**

White is currently serving a 30-month term of imprisonment for a probation violation from her original charge of distribution of methamphetamine. (Decl. of Christopher Parrent ("Parrent Decl."), Ex. A at 2, July 26, 2023, Docket No. 23-1.)[1] White filed her Petition for Writ of Habeas Corpus on March 24, 2023. (Pet. Writ. Habeas Corpus ("Pet."), March 24, 2023, Docket No. 1.) White then filed another Petition for Writ of Habeas Corpus on March 29, 2023. (2nd Pet. Writ. Habeas Corpus ("2nd Pet."), May 18, 2023, Docket No. 12.) The Court merged her two petitions into a single case. (Order Granting Mot. Merge Cases, May 17, 2023, Docket No. 11.)

While incarcerated, White has participated in a wide variety of evidence-based recidivism reduction ("EBRR") programming and productive activities that reward inmates FSA earned time credits ("ETCs"). (2nd Pet., Ex. 2 at 1.) White claims that the Bureau of Prisons ("BOP") has miscalculated and failed to apply the ETCs she earned from participating in these programs to her sentence. (2nd Pet., Ex. 1 at 1.) White states that she has ETCS based on her participation in EBRR programs, which she believes correlates to a 1,630-day reduction of her sentence. (*Id.*)

The Magistrate Judge reviewed White's Petition and issued an R&R recommending the Petition be denied and dismissed. (R. & R. at 5, July 3, 2023, Docket No. 20.) The Magistrate Judge concluded that White's interpretation of the FSA was incorrect, as the

---

[1] Unless otherwise noted, all docket citations are to entries in Civil No. 23-725.

law establishes that ETCs are based on the **number of days** in which a prisoner participates in eligible programs—not the **number of eligible programs** in which they participate.  (*Id.* at 2, 4.)  According to the Magistrate Judge, the BOP reasonably interpreted the FSA credit-accrual formula.  (*Id.* at 4.)  White then filed an objection to the R&R claiming that, because she had reduced her recidivism risk score, she is now entitled to earn 15 days of ETCs for every 30 days of successful participation in EBRR programming.  (Obj. R. & R. at 1, July 12, 2023, Docket No. 21.)  White also claims that, even if she did miscalculate her ETCs, the BOP has failed to credit her with **any** ETCs and, if they were to be applied, she would be eligible for immediate release.  (*Id.*)

## DISCUSSION

### I.   STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774 at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3).  When reviewing de novo, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues.  *See Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").  However, de novo review of a magistrate judge's R&R "only

means a district court 'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Riesselman*, 708 F. Supp. 2d 797, 807 (N.D. Iowa 2010) (quoting *United States v. Raddatz*, 447 U.S. 667, 675 (1980)).

A document filed by a pro se litigant is to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Eighth Circuit has been willing to liberally construe otherwise general pro se objections to R&Rs and to require a de novo review of all alleged errors. *See Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) ("[E]ven had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). However, "pro se litigants are not excused from failing to comply with substantive or procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

## II.   ACCUMULATION OF TIME CREDITS

### A.  Earned Time Credits to Date

White brought her initial Petition based on the theory that the BOP had incorrectly calculated her sentence in accordance with 18 U.S.C. § 3632. (Pet. at 1.) White alleges that she is entitled to have 1,630 days of ETCs applied to her sentence under the FSA. (*Id.*) White's calculations, however, are premised on an incorrect interpretation of the FSA. White interprets the FSA to mean she is entitled to 10 days of earned time credit for **every program** she participates in for 30 days, even if the programs are served concurrently. Under the FSA, however, "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or

-4-

productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  The regulation promulgated by the BOP entitles prisoners to 10 days of earned time credit per 30 days that the prisoner successfully participates in programming, regardless of how many programs the prisoner has successfully participated in during that time.  *See* 28 C.F.R. § 523.42(c)(1) ("For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.").

Contrary to White's assertion, the language of the FSA does not require the BOP to award prisoners time credits for each program or class completed.  Instead, the FSA requires the provision of earned time credits for every 30 days of successful participation in recidivism reduction "programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  A prisoner who participates in one program or many programs simultaneously is equally participating in "programming or productive activities."  *Id.*  As such, the Court finds the language to be unambiguous and support the BOP's calculation of ETCs.  Further, as the Magistrate Judge pointed out, White's interpretation has already been rejected by the Court and many other courts in this District.  (R. & R. at 3–4.)  *See Garcia v. Segal*, No. 23-883, 2023 WL 4927706, at *2 (D. Minn. Aug. 2, 2023).

Even if the FSA were ambiguous in this regard, White would not be entitled to habeas relief unless the BOP's interpretation of the statute was unreasonable.  *See Ameren Corp. v. FCC*, 865 F.3d 1009, 1012 (8th Cir. 2017) ("The agency's view 'governs if it

is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts.'") (quoting *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009)).  The BOP's interpretation—entitling prisoners to earned time credits based on the number of days spent in programming—is not an unreasonable interpretation of the FSA.  *See* 28 C.F.R. § 523.42(c)(1).

### B.  Rate of Earning Time Credits

In her Objection to the R&R, White asserts that she should now be earning ETCs at a rate of 15 credits for every 30 days of successful participation in EBRR programming. (Obj. R. & R. at 1.)  White claims that she has received a PATTERN risk assessment score of LOW "in excess TWO (2) Unit Team meetings."  (*Id.*)  She argues that this entitles her to receive 15 ETCs for every 30 days of her successful participation in EBRR programming under 18 U.S.C. § 3632.  (*Id.*)  The BOP responded that it has correctly determined that White is not yet eligible to earn ETCs at a rate of 15 credits per 30 days of successful participation in EBRR programming.  (Response to Obj. R. & R. at 8, July 26, 2023, Docket No. 22.)

The language of the FSA states that "[a] prisoner shall earn 10 days of time credit for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  In addition, "[a] prisoner determined by the Bureau of Prisons to be at a minimum or low risk for

recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation."   18 U.S.C. § 3632(d)(4)(A)(ii).   The language in the BOP's implementing regulation is similar but states that an eligible inmate must have "maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments . . . ."   28 C.F.R. § 523.42(c)(2)(ii).   The BOP argues that this language requires White to have received a low or minimum PATTERN score on three occasions to qualify to earn ETCs at a 15-day rate.   (Response to Obj. R. & R. at 12.)   Here, the Court finds that the statutory language favors the BOP's interpretation but is nonetheless ambiguous as to whether two or three assessments is required to begin earning ETCs at a 15-day rate.

The Court must "defer to the reasonable judgements of [the BOP] with regard to the meaning of ambiguous terms in statutes that [it is] charged with administering." *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 739 (1996) (citing *Chevron, U.S.A, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–845 (1984)).   There is no doubt that Congress has delegated the authority to administer the FSA's time credit provisions to the BOP.   *See* 18 U.S.C. § 3632(d)–(e).   Here, the Court finds the statutory language "over 2 consecutive assessments, **has not increased** their risk of recidivism" indicates that requiring an initial assessment of low or minimum risk followed by two assessments where the prisoner's risk has not increased is a reasonable interpretation of the statute.   18 U.S.C. § 3632(d)(4)(A)(ii).

In White's case, she received her initial low PATTERN score for the period beginning on April 10, 2023. (Parrent Decl. ¶ 6; Parrent Decl., Ex. C. at 1.) White then received her second low PATTERN score for the period beginning July 9, 2023. (*Id.*) According to the BOP's interpretation of the FSA, White must maintain her low PATTERN score for one more assessment period to begin earning ETCs at a 15-day rate. As described above, because this is a reasonable interpretation of the FSA, the Court will defer to the BOP's interpretation. Therefore, the Court finds that White is not yet eligible to earn ETCs at a 15-day rate.

### III.   APPLICATION OF EARNED TIME CREDITS

White also alleges in her Objection to the R&R that even if she incorrectly calculated her ETCs, she has not received **any** of them. (Obj. R. & R. at 1.) If they were applied, she claims that she would be entitled to immediate release. (*Id.*) White's argument is premised on a misunderstanding of the FSA and the BOP's implementing regulations. White is incorrect that she would be entitled to immediate release, and it appears that her ETCs have been or will be properly applied towards putting her in prerelease custody.

The FSA and the BOP's implementing regulations both make a distinction between **earning** ETCs and **applying** ETCs. *See* 18 U.S.C. § 3632(d)(4)(C); *see also* 28 C.F.R § 523.44. The FSA states that "[t]ime credits earned . . . shall be applied toward time in **prerelease custody or supervised release**." 18 U.S.C. § 3632(d)(4)(C). The BOP has interpreted this to mean that ETCs may **only** be applied towards time in prerelease custody or supervised

-8-

release and never towards immediate, unsupervised release.  *See* 28 C.F.R § 523.44(a)(1). While this may not be the only possible interpretation of the FSA, the Court finds it to be a reasonable one and, as such, BOP's interpretation controls.  *See Ameren Corp.,* 865 F.3d at 1012.

White has no term of supervised release following her term of imprisonment. (Parrent Decl. ¶ 4.)  Because she has no term of supervised release as part of her sentence, White can only apply her ETCs towards prerelease custody, which constitutes placement in Residential Re-Entry or home confinement.  18 U.S.C. § 3624(g)(2).  White's home confinement referral was submitted in February 2023, at which point she had accumulated 100 days of ETCs.  (*Id.* ¶ 12.)  White's projected release date is December 21, 2023, and she has been given a home confinement placement date of September 22, 2023.  (*Id.* ¶ 3, 12.)  Under the BOP's calculation, White has now earned 160 days of ETCs towards prerelease confinement.  (Parrent Decl. ¶ 11.)

Because White was not sentenced to a term of supervised release, White's Petition must be construed as a request to receive earlier prerelease transfer to home confinement because it is the only remedy available to her.  However, this request is not cognizable because the Court lacks authority to order her transfer to prerelease custody. The Eighth Circuit has held that "[w]here petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ."  *Kruger v. Erickson*, 77 F.3d

1071, 1073 (8ᵗʰ Cir. 1996).  Because home confinement is simply a "place of confinement," and prisoners do not have a right to placement in a particular facility or place of confinement, White's claims do not challenge either the fact or validity of her confinement.  *See United States v. James*, No. 15-255, 2020 WL 1922568, at *2 (D. Minn. April, 21, 2020) (citing *Khdeer v. Paul*, No. 18-2112, 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)) (collecting cases).  Although the FSA expanded prisoners' release opportunities, courts have observed that "it is the BOP—not the courts—who decides whether home detention is appropriate."  *Id.* (quoting *United States v. Yates*, No. 15-40063, 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019)).  The Court lacks the authority to review transfer and placement decisions, including home confinement determinations. *United States v. Walker*, at *2, 2020 WL 2490101 (D. Minn. May 14, 2020) ("Courts have consistently held that placement questions are not reviewable.") (collecting cases). Because White's Petition, if successful, would only affect the place of her confinement and not the length or fact of her confinement, the Court lacks jurisdiction to grant her Petition.

**IV.   CERTIFICATE OF APPEALABILITY**

Lastly, 28 U.S.C. § 2253(c) dictates that an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding unless a judge issues a Certificate of Appealability ("COA").  A COA should only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2553(c)(3). The Supreme Court has further clarified that a COA is only appropriate if petitioner has

-10-

shown "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

The Court finds that White has not made a substantial showing of the denial of a constitutional right, and that reasonable jurists could not debate whether her petition for habeas corpus should have been resolved in a different manner. The Court will therefore not grant her a Certificate of Appealability.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Objection to the Report & Recommendation [Docket No. 21] is **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 20] is **ADOPTED**;

3. Petitioner's Petition for Writ of Habeas Corpus [Docket Nos. 1 and 12] is **DENIED**; and

4. Petitioner's action is **DISMISSED without prejudice;**[2] and

---

[2] The Court is dismissing White's action without prejudice, meaning that White's right to sue again is reserved, and she is allowed to re-file charges or alter her claim and bring it again in the future if there is new information relevant to the Court's decision.

5. The Court does **NOT** issue a Certificate of Appealability under 28 U.S.C. § 2253(c).

DATED:  September 13, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge